TINA WOLFSON, SBN 174806
twolfson@ahdootwolfson.com
ROBERT AHDOOT, SBN 172098
rahdoot@ahdootwolfson.com
THEODORE W. MAYA, SBN 223242
tmaya@ahdootwolfson.com
KEITH CUSTIS, SBN 218818 (Of Counsel)
keith@custis-law.com
**AHDOOT & WOLFSON, P.C.**
1016 Palm Street
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

JOHN A. YANCHUNIS  (Pro Hac Vice
application to be filed)
jyanchunis@forthepeople.com
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505; Fax: (813) 223-5402

PAUL C. WHALEN (Pro Hac Vice
application to be filed)
pcwhalen@gmail.com
**LAW OFFICES OF PAUL C.
WHALEN, P.C.**
768 Plandome Road
Manhasset, New York 11030
Tel: (516) 627-5610; Fax: (212) 658-9685

Counsel for Plaintiffs
WALID KHALAF, JASMIN GONZALEZ,
STEFANIE SMITH and  STEVE O'BRIEN

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALID KHALAF, JASMIN GONZALEZ, STEFANIE SMITH and STEVE O'BRIEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation,<br><br>Defendant. | Case No.   **'14CV2175 GPC JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Walid Khalaf, Jasmin Gonzalez, Stefanie Smith and Steve O'Brien, by and through their counsel, bring this Class Action Complaint against defendant Home Depot U.S.A., Inc., on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this class action against Defendant Home Depot U.S.A., Inc. for its failure to secure and safeguard its customers' credit and debit card numbers and other payment card data ("PCD"), personally identifiable information such as the cardholder's names, mailing addresses, and other personal information ("PII") (collectively, "Private Information"), and for failing to provide timely and adequate notice to Plaintiffs and other Class members that their Private Information had been stolen and precisely what types of information were stolen.

2.     Beginning in or around April 2014, hackers utilizing malicious software accessed the point-of-sale systems at Home Depot locations throughout the United States and stole copies of Home Depot customers' Private Information (the "Data Breach").  In early September 2014, Home Depot customers' Private Information was placed for sale on an underground website notorious for offering PII and PCD.

3.     On September 3, 2014, after security blogger Brian Krebs first reported news of the Data Breach, Home Depot admitted that it did not become aware of the Data Breach until September 2, 2014.  Six days later, on September 8, 2014, Home Depot confirmed on its website that it had allowed a massive breach of its customers' Private Information to occur in 2014, stating that its "systems have in fact been breached, which could potentially impact any customer that has used their payment card at our U.S. and Canadian stores, from April forward."[1]  Home Depot's security protocols were so deficient that the Data Breach continued for nearly five months while

---

[1] <https://corporate.homedepot.com/mediacenter/pages/statement1.aspx> (last visited Sept. 12, 2014).

CLASS ACTION COMPLAINT

Home Depot failed to even detect it – this despite widespread knowledge of the malicious software (or malware) used to perpetrate the Data Breach, which was a variant of the same malware used to perpetrate an earlier, notorious, and widely reported data breach affecting the retailer Target Corporation.[2]

4.      Home Depot has yet to fully disclose what types of Private Information were stolen, but concedes that "[p]ayment card information such as name, credit card number, expiration date, cardholder verification value and service code for purchases made at Home Depot stores in 2014, from April on" were "compromised."[3]

5.      Reuters reports that "experts fear the attackers may have gotten away with more than 40 million payment cards, which would exceed the number taken in last year's unprecedented data breach on Target Corp."[4] Home Depot concedes that customers who shopped at its stores as far back as April 2014 were exposed.  Thus, the Data Breach extended for nearly five months, including the busy summer season — far longer than the three-week Target data breach.

6.      Home Depot could have prevented this Data Breach.  The malicious software used in the Data Breach was a variant of "BlackPOS," the identical malware strain that hackers used in last year's data breach at Target.  While many retailers, banks and card companies responded to recent breaches, including the Target breach, by adopting technology that helps makes transactions more secure, Home Depot did not do so.

7.      Home Depot disregarded Plaintiffs' and Class members' rights by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available

---

[2] <http://krebsonsecurity.com/2014/09/home-depot-hit-by-same-malware-as-target/> (last visited Sept. 12, 2014).

[3]<https://corporate.homedepot.com/MediaCenter/Documents/Required%20Regulatory%20Notice.PDF> (last visited Sept. 12, 2014).

[4] <http://www.reuters.com/article/2014/09/09/home-depot-dataprotection-breach-probe-idUSL1N0RA1DL20140909> (last visited Sept. 12, 2014).

steps to prevent and stop the breach from ever happening, and failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' Private Information.  On information and belief, Plaintiffs' and Class members' Private Information was improperly handled and stored, was unencrypted, and was not kept in accordance with applicable, required, and appropriate cyber-security protocols, policies, and procedures. As a result, Plaintiffs' and Class members' Private Information was compromised and stolen.

8.      Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, alleging that Home Depot violated the California Consumer Records Act, Civil Code Sections 1798.81.5 & 1798.82; breached its implied contract with Plaintiffs and Class members; and violated the California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL").

## **PARTIES**

9.      Plaintiff Walid Khalaf is an individual and resident of San Diego County, California. Between April 1, 2014 and September 8, 2014, Mr. Khalaf used a credit card to make several purchases at the Home Depot store located at 5920 Fairmount Ave, San Diego, California. To date, Mr. Khalaf has not received any notice from Home Depot about the Data Breach.

10.     Plaintiff Jasmin Gonzalez is an individual and resident of Los Angeles County, California.  Between April 1, 2014 and September 8, 2014, Ms. Gonzalez used a credit card to make several purchases at the Home Depot store located 2450 Cherry Avenue, Signal Hill, California. To date, Ms. Gonzalez has not received any notice from Home Depot about the Data Breach.

11.     Plaintiff Stefanie Smith is an individual and resident of Los Angeles County, California.  Between April 1, 2014 and September 8, 2014, Ms. Smith used a Bank of America debit card to make five purchases at the Home Depot store located at 5000 Hardwick St., Lakewood, California, including a purchase on September 4, 2014. To date, Ms. Smith has not received any notice from Home Depot about the Data

Breach.

12.     Plaintiff Steve O'Brien is an individual and resident of San Diego County, California. Between April 1, 2014 and September 8, 2014, Mr. O'Brien used a credit card to make several purchases at the Home Depot store located at 3555 Sports Arena Blvd, San Diego, California. To date, Mr. O'Brien has not received any notice from Home Depot about the Data Breach.

13.     Home Depot Home Depot U.S.A., Inc. is a Delaware corporation headquartered in Atlanta, Georgia.  Home Depot operates retail stores throughout the United States, including the California locations where Plaintiffs' purchases were made.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and defendant Home Depot, on the other, are citizens of different states.

15.     This Court has jurisdiction over Home Depot because it is registered to conduct business in California, has sufficient minimum contacts in California or otherwise intentionally avails itself of the markets within California, through the promotion, sale, marketing and distribution of products sold at its retail stores located in California, to render the exercise of jurisdiction by this Court proper and necessary.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District as Home Depot operates retail locations within this District, Plaintiff Khalaf resides here, and his purchases took place at Home Depot's retail store located within this District.

//

//

//

CLASS ACTION COMPLAINT

# FACTUAL BACKGROUND

**A.**   **Home Depot and its Private Information Collection Practices**

17.    Home Depot operates approximately 1,977 home improvement and construction retail stores in the United States.  Home Depot is the fifth largest retailer in the United States, behind Walmart, Kroger, Costco, and Target, with annual U.S. sales in 2013 of $69,951 billion.

18.    When consumers make purchases at Home Depot retail stores using credit or debit cards, Home Depot collects PCD related to that card including the card holder name, the account number, expiration date, card verification value (CVV), and PIN data for debit cards. Home Depot stores the PCD in its point-of-sale system and transmits this information to a third party for completion of the payment. Home Depot also collects and stores PII, including but not limited to customer names, mailing addresses, phone numbers, and email addresses.

19.    Through its Privacy Policy, which is available on its website, Home Depot advises consumers about the categories of Private Information it collects:

**Information We Collect**

**Contact information**

We may collect the names and user names of our customers and other visitors.  Additionally, we may collect your purchase history, billing and shipping addresses, phone numbers, email addresses, and other digital contact information. We may also collect information that you provide us about others.

**Payment information**

When you make a purchase we collect your payment information, including information from your credit or debit card, check, PayPal account or gift card. If you apply for a The Home Depot credit card or a home improvement loan, we might collect information related to your application.

**Returns information**

When you return a product to our stores or request a refund or exchange, we may collect information from you and ask you

6

to provide your government issued ID. We use the information we collect from you and capture off of your government issued ID to help prevent fraud. To learn more about our Returns Policy, click here.

### Demographic information

We may collect information about products or services you like, reviews you submit, or where you shop. We might also collect information like your age or gender.

### Location information

If you use our mobile websites or applications, we may collect location data obtained from your mobile device's GPS. If you use our websites, we may collect location data obtained from your IP address. We use this location data to find our nearest store to you, product availability at our stores near you and driving directions to our stores.

### Other information

If you use our websites, we may collect information about the browser you are using. We might track the pages you visit, look at what website you came from, or what website you visit when you leave us. We collect this information using the tracking tools described here. To control those tools, please read the Your Privacy Preferences section.[5]

20. Thus, Home Depot stores massive amounts of PII and PCD on its servers and utilizes this information to maximize its profits through predictive marketing and other marketing techniques.

**B.** **Consumers Rely On Home Depot's Private Information Security Practices**

21. Consumers place value in data privacy and security, and they consider it when making purchasing decisions. Plaintiffs would not have made purchases at Home Depot, or would not have paid as much for them, had they known that Home Depot does not take all necessary precautions to secure their personal and financial data. Home Depot failed to disclose its negligent and insufficient data security practices and consumers relied on this omission to make purchases at Home Depot.

---

[5] <http://www.homedepot.com/c/Privacy_Security> (hyperlinks omitted) (last visited Sept. 12, 2014).

CLASS ACTION COMPLAINT

22.     Furthermore, when consumers purchase goods at a national retailer, such as Home Depot, they assume that its data security practices and policies are state-of-the-art and that the retailer will use part of the purchase price that consumers pay for such state-of-the-art practices. Consumers thus enter into an implied contract with Home Depot that Home Depot will adequately secure and protect their Private Information, and will use part of the purchase price of the goods to pay for adequate data security measures. In fact, rather than use those moneys to implement adequate data security policies and procedures, Home Depot failed to provide reasonable security measures, thereby breaching its implied contract with Plaintiffs.

C.     **Stolen Private Information Is Valuable to Hackers and Thieves**

23.     It is well known and the subject of many media reports that PII data is highly coveted and a frequent target of hackers.  PII data is often easily taken because it may be less protected and regulated than payment card data.

24.     Legitimate organizations and the criminal underground alike recognize the value in PII.  Otherwise, they wouldn't pay for it or aggressively seek it.  For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million customers, they also took registration data from 38 million users."[6] Similarly, in the Target data breach, in addition to PCI data pertaining to 40,000 credit and debit cards, hackers stole PII pertaining to 70,000 customers.

25.     "Increasingly, criminals are using biographical data gained from multiple sources to perpetrate more and larger thefts." *Id*.

26.     PII data has been stolen and sold by the criminal underground on many occasions in the past, and the accounts of thefts and unauthorized access have been the subject of many media reports.  Unfortunately, and as will be alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands

---

[6] Verizon 2014 PCI Compliance Report, available at <http://www.nocash.info.ro/wp-content/uploads/2014/02/ Verizon_pci-report-2014.pdf> (hereafter "2014 Verizon Report"), at 54 (last visited Sept. 12, 2014).

of other third parties, such as retailers, Home Depot's approach at maintaining the privacy of Plaintiffs' and Class members' PII was lackadaisical, cavalier, reckless, or at the very least, negligent.

**D.   Home Depot Failed to Segregate PCD From PII**

27.   Unlike PII data, PCD (or payment card data) is heavily regulated.  The Payment Card Industry Data Security Standard ("PCI DSS") is a set of requirements designed to ensure that companies maintain consumer credit and debit card information in a secure environment.

28.   "PCI DSS provides a baseline of technical and operational requirements designed to protect cardholder data."[7]

29.   One PCI requirement is to protect stored cardholder data.  Cardholder data includes Primary Account Number, Cardholder Name, Expiration Date, and Service Code.

30.   "Network segmentation of, or isolating (segmenting), the cardholder data environment from the remainder of an entity's network is not a PCI DSS requirement."[8] However, segregation is recommended because among other reasons, "[i]t's not just cardholder data that's important; criminals are also after personally identifiable information (PII) and corporate data."[9]

31.   Illicitly obtained PII and PCI, sometimes aggregated from different data breaches, is sold on the black market, including on websites, as a product at a set price.[10]

**E.   The 2014 Data Breach at Home Depot**

32.   On September 2, 2014, Home Depot's banking partners and law

---

[7] PCI DSS v. 2 at 5 (2010) (hereafter PCI Version 2).

[8] *Id.* at 10.

[9] *See* Verizon Report at 54.

[10] *See, e.g.*, <http://krebsonsecurity.com/2011/11/how-much-is-your-identity-worth> (last visited Sept. 12, 2014).

CLASS ACTION COMPLAINT

enforcement officials notified the retailer of a potential data breach involving the theft of its customers' credit card and debit card data.

33.    That same day, multiple banks began reporting evidence that Home Depot stores were the likely source of a massive batch of stolen card data that went on sale that morning at rescator.cc, the same underground cybercrime shop that sold millions of cards stolen in the 2013 attack on Target. [11]

34.    Specifically, according to security blogger Brian Krebs of Krebs on Security (the "Krebs Report"), the cybercrime store rescator.cc (the "Rescator website") listed consumer credit cards for sale that, with the unique ZIP code and other card data, at least four banks had traced back to previous transactions at Home Depot.

35.    The Krebs Report explained that "experienced crooks prefer to purchase cards that were stolen from stores near them, because they know that using the cards for fraudulent purchases in the same geographic area as the legitimate cardholder is less likely to trigger alerts about suspicious transactions — alerts that could render the stolen card data worthless for the thieves."[12]  The Krebs Report indicated a "staggering 99.4 percent overlap" between the unique ZIP codes represented on the Rescator website and those of Home Depot stores, strongly suggesting that the source of the breached credit card data was from Home Depot.

36.    The ZIP code information the Krebs Report pulled from the Rescator website appears to represent the vast majority, if not all, of Home Depot's approximately 2,000 domestic retail locations.  The Krebs Report further indicated that, based on conversations with affected banks, this data breach "probably started in late April or early May" and may be ongoing, potentially dwarfing the 40 million debit and credit cards affected by the recent Target data breach (which had 1,800 stores affected

---

[11] <http://krebsonsecurity.com/2014/09/home-depot-hit-by-same-malware-as-target/> (last visited Sept. 12, 2014).

[12] <http://krebsonsecurity.com/2014/09/data-nearly-all-u-s-home-depot-stores-hit/> (last visited Sept. 12, 2013).

CLASS ACTION COMPLAINT

during a period of approximately 3 weeks).

37.   On September 3, 2014, Home Depot could not confirm whether a data breach occurred, but indicated it first learned of a "potential breach" on September 2, 2014, at least one day before the Krebs Report.[13]

38.   Indeed, after this news broke, Home Depot released an ambiguous and uninformative statement buried on its corporate site – and not the Internet site visited by consumers – concerning the Data Breach that failed to confirm the breach, and still did not notify affected customers directly:

> **Message to our customers about news reports of a possible payment data breach.**
>
> We're looking into some unusual activity that might indicate a possible payment data breach and we're working with our banking partners and law enforcement to investigate.  We know that this news may be concerning and we apologize for the worry this can create.  If we confirm a breach has occurred, we will make sure our customers are notified immediately.[14]

39.   On September 8, 2014, Home Depot confirmed that its systems "have in fact been breached, which could potentially impact any customer that has used their payment card at our U.S. and Canadian stores, from April forward."[15]

40.   Home Depot has not indicated whether social security numbers, PIN numbers and dates of birth were compromised, nor has it disclosed whether the wide range of other PII that it collects, including names, addresses, telephone numbers, mobile telephone numbers, driver's license numbers, bank account numbers, email addresses, computer IP addresses, and location information, were disclosed in the

---

[13] <http://online.wsj.com/articles/home-depot-tries-to-reassure-customers-about-possible-data-breach-1409743851> (last visited Sept. 12, 2014).

[14] <https://corporate.homedepot.com/mediacenter/pages/statement1.aspx> (last visited Sept. 12, 2014).

[15] <https://corporate.homedepot.com /mediacenter/pages/ statement1.aspx> (last visited Sept. 12, 2014).

CLASS ACTION COMPLAINT

breach.[16]

41.    Without such detailed disclosure, Plaintiffs and Class members are unable to take the necessary precautions to prevent imminent harm, such as continued misuse of their personal information.

42.    If fraud were occurring from late April to early September of 2014, because hackers already had their hands on cardholder data and PII, credit card company analytics and other methods (undercover investigations of the black market) would likely have discovered it before September 2, 2014.  Home Depot has failed to provide a cogent picture of how the Data Breach occurred and its full effects on customers' PII and PCD information.

43.    Hacking is often accomplished in a series of phases to include reconnaissance, scanning for vulnerabilities and enumeration of the network, gaining access, escalation of user, computer and network privileges, maintaining access, covering tracks and placing backdoors.  On information and belief, while hackers scoured Home Depot's networks to find a way to access PCD, they had access to and collected the PII stored on Home Depot's networks.

44.    "The stolen card data being offered for sale on rescator.cc includes both the information needed to fabricate counterfeit cards *as well as the legitimate cardholder's full name* and the city, state and ZIP of the Home Depot store from which the card was stolen."[17]   Information pertaining to the cardholder's location allows hackers to obtain a cardholder's Social Security number and date of birth, further increasing the risk of identity theft (above and beyond fraudulent credit and/or debit card transactions) for affected Home Depot customers.

45.    Thieves already are using the Private Information stolen from Home Depot to commit actual fraud.  Some thieves are using the Private Information to change a

---

[16] <http://www.homedepot.com/c/Privacy_Security> (last visited Sept. 12, 2014).

[17] <http://krebsonsecurity.com/2014/09/in-wake-of-confirmed-breach-at-home-depot-banks-see-spike-in-pin-debit-card-fraud/> (last visited Sept. 12, 2014).

CLASS ACTION COMPLAINT

cardholder's PIN numbers on stolen debit cards and to make ATM withdrawals from Home Depot customer's accounts.  On September 8, 2014, a bank located on the West Coast reported that it "lost more than $300,000 in two hours today to PIN fraud on *multiple debit cards that had all been used recently at Home Depot*."[18] (emphasis added).  On that same day, the Krebs Report advised that multiple financial institutions had reported "a steep increase over the past few days in fraudulent ATM withdrawals on customer accounts."

46.     The Data Breach was caused and enabled by Home Depot's knowing violation of its obligations to abide by best practices and industry standards in protecting its customers' Private Information.

47.     In this regard, the software used in the attack was a variant of "BlackPOS," a malware strain designed to siphon data from cards when they are swiped at infected point-of-sale systems.[19] Hackers had previously utilized BlackPOS in other recent cyber attacks, including last year's breach at Target.  While many retailers, banks and card companies have responded to these recent breaches by adopting technology and security practices that help makes transactions and stored data more secure, Home Depot did not do so. In light of the breach, however, Home Depot now has announced that it plans to have chip-enabled checkout terminals at all of its U.S. stores by the end of 2014.[20]

## F.   <u>This Data Breach Will Result In Identity Theft and Identify Fraud</u>

48.     Home Depot failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the data breach.

49.     The ramifications of Home Depot's failure to keep Class members' data

---

[18] *Id.*

[19] http://krebsonsecurity.com/2014/09/home-depot-hit-by-same-malware-as-target/ (last visited September 12, 2014).

[20] <http://money.msn.com/businessnews/article.aspx?feed=AP&date=20140909&id= 17914998&ocid=ansmony11> (last visited September 12, 2014).

secure are severe.

50.     The information Home Depot compromised, including Plaintiffs' identifying information and/or other financial information, is "as good as gold" to identity thieves, in the words of the Federal Trade Commission ("FTC").[21] Identity theft occurs when someone uses another's personal identifying information, such as that person's name, address, credit card number, credit card expiration dates, and other information, without permission, to commit fraud or other crimes. The FTC estimates that as many as 10 million Americans have their identities stolen each year.

51.     As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[22]

52.     According to Javelin Strategy and Research, "1 in 4 data breach notification recipients became a victim of identity fraud."[23] Nearly half (46%) of consumers with a breached debit card became fraud victims within the same year.

53.     Identity thieves can use personal information such as that of Class members, which Home Depot failed to keep secure, to perpetrate a variety of crimes that harm victims.  For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.  Some of this activity may not come to light for years.

---

[21] FTC Interactive Toolkit, Fighting Back Against Identity Theft, *available at* <http://www.dcsheriff.net/community/documents/id-theft-tool-kit.pdf> (last visited Sept. 12, 2014).

[22] FTC, Signs of Identity Theft, available at <http://www.consumer.ftc.gov/articles/ 0271-signs-identity-theft> (last visited Sept. 12, 2014).

[23] See 2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at <www.javelinstrategy.com/brochure/ 276> (last visited Sept. 12, 2014) (the "2013 Identity Fraud Report").

14

54.     In addition, identity thieves may get medical services using consumers' compromised personal information or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

55.     It is incorrect to assume that reimbursing a consumer for fraud makes that individual whole again.  On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[24] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

56.     Annual monetary losses from identity theft are in the billions of dollars.

57.     Javelin Strategy and Research reports that those losses increased to $21 billion in 2013.[25]

58.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII or PCD is stolen and when it is used.  According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, *stolen data may be held for up to a year or more before being used to commit identity theft*. Further, once stolen data have been sold or posted on the Web, *fraudulent use of that information may continue for years*. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

59.     Plaintiffs and Class members now face years of constant surveillance of

---

[24] Victims of Identity Theft, 2012 (Dec. 2013) at 10, available at <http://www.bjs.gov/content/pub/pdf/vit12. pdf> (last visited Sept. 12, 2014).

[25] *See* 2013 Identity Fraud Report.

[26] GAO, Report to Congressional Requesters, at p.33 (June 2007), available at <http://www.gao.gov/new.items/d07737.pdf> (emphases added) (last visited Sept. 12, 2014).

their financial and personal records, monitoring, and loss of rights.  The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

**G.     Plaintiffs and Class Members Suffered Damages**

60.     The Data Breach was a direct and proximate result of Home Depot's failure to properly safeguard and protect Plaintiffs' and Class members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Home Depot's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' Private Information to protect against reasonably foreseeable threats to the security or integrity of such information.

61.     Plaintiffs' and Class members' Private Information is private and sensitive in nature and was left inadequately protected by Home Depot. Home Depot did not obtain Plaintiffs' and Class members' consent to disclose their Private Information to any other person as required by applicable law and industry standards.

62.     As a direct and proximate result of Home Depot's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

63.     Home Depot's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class

members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.    theft of their personal and financial information;

    b.    the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their credit/debit card and personal information being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the Internet card black market;

    c.    the untimely and inadequate notification of the Data Breach;

    d.    the improper disclosure of their Private Information;

    e.    loss of privacy;

    f.    ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    g.    ascertainable losses in the form of deprivation of the value of their PII and PCD, for which there is a well-established national and international market;

    h.    overpayments to Home Depot for products purchased during the Data Breach in that a portion of the price paid for such products by Plaintiffs and Class members to Home Depot was for the costs of reasonable and adequate safeguards and security measures that would protect customers' Private Information, which Home Depot did not implement and, as a result, Plaintiffs and Class members did not receive what they paid for and were overcharged by Home Depot;

    i.    the loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain

17

from their accounts; and

j.      deprivation of rights they possess under the California Business and Professions Code § 17200, *et seq*.

64.     Plaintiffs also purchased products or services they otherwise would not have purchased, or paid more for those products and services than they otherwise would have paid.

65.     Notwithstanding Home Depot's wrongful actions and inaction and the resulting Data Breach, Home Depot has offered consumers only one year of credit monitoring and identity theft protection services. This offer is insufficient because, *inter alia*, it does not address many categories of damages being sought. The cost of adequate and appropriate coverage, or insurance, against the loss position Home Depot has placed Plaintiffs and Class members in, is ascertainable and is a determination appropriate for the trier of fact.

66.     Home Depot's offer of one-year of free identity protection services, including credit monitoring, is also insufficient because, as the GAO reported, the PII/PCD could be held by criminals and used to commit fraud after the one year of credit monitoring and identity theft protection expires.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs seek relief in their individual capacity and as representatives of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a national class and a California class.  The national class is initially defined as follows:

> All persons residing in the United States whose personal and/or financial information was disclosed in the data breach affecting Home Depot in 2014 (the "National Class").

68.     The California Class is initially defined as follows:

> All persons residing in California whose personal and/or financial information was disclosed in the data breach affecting Home Depot in 2014 (the "California Class).

69.     Excluded from each of the above Classes are Home Depot, including any

entity in which Home Depot has a controlling interest, is a parent or subsidiary, or which is controlled by Home Depot, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Home Depot. Also excluded are the judges and court personnel in this case and any members of their immediate families.

70.   Numerosity.  Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that the joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is in the millions.

71.   Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

   a.   Whether Home Depot violated California Civil Code § 1798.81.5 by failing to implement reasonable security procedures and practices;

   b.   Whether Home Depot violated California Civil Code § 1798.82 by failing to promptly notify class members their personal information had been compromised;

   c.   Whether class members may obtain an injunctive relief against Home Depot under Civil Code § 1798.84 or under the UCL;

   d.   What security procedures and data-breach notification procedure should Home Depot be required to implement as part of any injunctive relief ordered by the Court;

   e.   Whether Home Depot has an implied contractual obligation to use reasonable security measures;

   f.   Whether Home Depot has complied with any implied contractual obligation to use reasonable security measures;

   g.   What security measures, if any, must be implemented by Home Depot to

comply with its implied contractual obligations;

    h.  Whether Home Depot violated California Business and Professions Code § 17200, *et seq.*; and

    i.  The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

72.    All members of the purposed Classes are readily ascertainable. Home Depot has access to addresses and other contact information for millions of members of the Classes, which can be used for providing notice to many Class members.

73.    <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members because Plaintiffs' information, like that of every other class member, was misused and/or disclosed by Home Depot.

74.    <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

75.    <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

76.    Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Home Depot's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

77.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Home Depot has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

### For Violation of the Civil Code Sections 1798.81.5 & 1798.82

### (On Behalf of Plaintiffs and the California Class)

78. Plaintiffs incorporate the substantive allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

79. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code section 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

80. By failing to implement reasonable measures to protect the California Class's personal information, Home Depot violated Civil Code section 1798.81.5.

81. In addition, by failing to promptly notify all affected Home Depot users that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Home Depot violated Civil Code Section 1798.82 of the same title.

82. As a direct or proximate result of Home Depot's violations of Civil Code Sections 1798.81.5 and 1798.82, Plaintiffs and Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail in Paragraphs 60 through 66 of this Class Action Complaint.

83. In addition, by violating Civil Code Sections 1798.81.5 and 1798.82, Home Depot "may be enjoined" under Civil Code Section 1798.84(e).

84. Home Depot's violations of Civil Code Section 1798.81.5 and 1798.82 also constitute an unlawful acts or practices under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

85. Plaintiffs accordingly request that the Court enter an injunction requiring

Home Depot to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Home Depot utilize strong industry standard encryption algorithms for encryption keys that provide access to stored customer data; (2) ordering that Home Depot implement the use of its encryption keys in accordance with industry standards; (3) ordering that Home Depot, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests and audits on Home Depot's systems on a periodic basis; (4) ordering that Home Depot engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (5) ordering that Home Depot audit, test and train its security personnel regarding any new or modified procedures; (6) ordering that Home Depot, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Home Depot is compromised, hackers cannot gain access to other portions of Home Depot's systems; (7) ordering that Home Depot purge, delete, destroy in a reasonable secure manner customer data not necessary for its provisions of services; (8); ordering that Home Depot, consistent with industry standard practices, conduct regular database scanning and security checks; (9) ordering that Home Depot, consistent with industry standard practices, evaluate web applications for vulnerabilities to prevent web application threats to consumers who purchase Home Depot products and services through the internet; (10) ordering that Home Depot, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (11) ordering Home Depot to meaningfully educate its customers about the threats they face as a result of the loss of their PII/PCD to third parties, as well as the steps Home Depot's customers must take to protect themselves.

86.     Plaintiffs further request that the Court requires Home Depot to identify

CLASS ACTION COMPLAINT

and notify all members of the Class who have not yet been informed of the Data
Breach, and to notify affected customers of any future data breaches by email within 24
hours of Home Depot's discovery of a breach or possible breach and by mail within 72
hours.

## COUNT II

### Breach of Implied Contract

### (On Behalf of Plaintiffs, the National Class, and the California Class)

87.     Plaintiffs incorporate the substantive allegations contained in Paragraphs 1
through 77 as if fully set forth herein.

88.     Home Depot solicited and invited Plaintiffs and Class members to
purchase products at Home Depot's stores using their credit or debit cards. Plaintiffs
and Class members accepted Home Depot's offers and used their credit or debit cards to
purchase products at Home Depot's stores during the period of the Data Breach.

89.     When Plaintiffs and Class members provided their PII and PCD to Home
Depot to make purchases at Home Depot's stores, including but not limited to the PII
and PCD contained on the face of, and embedded in the magnetic strip of, their debit
and credit cards, Plaintiffs and Class members entered into implied contracts with
Home Depot pursuant to which Home Depot agreed to safeguard and protect such
information and to timely and accurately notify Plaintiffs and Class members if their
data had been breached and compromised.

90.     Each purchase at a Home Depot store made by Plaintiffs and Class
members using their credit or debit card was made pursuant to the mutually agreed-
upon implied contract with Home Depot under which Home Depot agreed to safeguard
and protect Plaintiffs' and Class members' PII and PCD, including all information
contained in the magnetic stripe of Plaintiffs' and Class members' credit or debit cards,
and to timely and accurately notify them if such information was compromised or
stolen.

91.     Plaintiffs and Class members would not have provided and entrusted their

23

PII and PCD, including all information contained in the magnetic stripes of their credit and debit cards, to Home Depot to purchase products at Home Depot's stores in the absence of the implied contract between them and Home Depot.

92.     Plaintiffs and Class members fully performed their obligations under the implied contracts with Home Depot.

93.     Home Depot breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect the PII and PCD of Plaintiffs and Class members and by failing to provide timely and accurate notice to them that their PII and PCD was compromised in and as a result of the Data Breach.

94.     As a direct and proximate result of Home Depot's breaches of the implied contracts between Home Depot and Plaintiffs and Class members, Plaintiffs and Class members sustained actual losses and damages as described in detail in Paragraphs 60 through 66 of this Class Action Complaint.

## COUNT III

**Violation of California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of Plaintiffs and the California Class)**

95.     Plaintiffs incorporate the substantive allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

96.     Home Depot engaged in unfair, fraudulent and unlawful business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

97.     Plaintiffs suffered injury in fact and lost money or property as a result of Home Depot's alleged violations of the UCL.

98.     The acts, omissions and conduct of Home Depot as alleged constitutes a "business practice" within the meaning of the UCL.

99.     Home Depot violated the unlawful prong of the UCL by violating Civil Code Sections 1798.81.5 and 1798.82, as alleged above.

100.    Home Depot also violated the unlawful prong of the UCL by failing to

CLASS ACTION COMPLAINT

honor the terms of the implied contracts between Plaintiffs and Class members and Home Depot, as alleged above.

101.   Home Depot's acts, omissions and conduct also violate the unfair prong of the UCL because Home Depot's acts, omissions and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other Class members. The gravity of Home Depot's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Home Depot's legitimate business interests, other than Home Depot's conduct described herein.

102.   Home Depot's conduct also undermines California public policy — as reflected in statutes like the Information Practices Act, Cal. Civ. Code § 1798 *et seq.*, and the California Customer Records Act, Cal. Civ. Code §§ 1798.81.5 and 1798.82 concerning customer records — which seek to protect customer data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

103.   By failing to disclose that it does not enlist industry standard security practices, which render Home Depot's products and services particularly vulnerable to data breaches, Home Depot engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

104.   A reasonable consumer would not have purchased a product at a Home Depot store with a credit or debit card had she known the truth about Home Depot's security procedures. By withholding material information about Home Depot's security practices, Home Depot was able to convince customers to provide and entrust their Private Information to Home Depot. Had Plaintiffs known truth about Home Depot's security procedures, they would not have made purchases at Home Depot, or would not have paid as much for them.

105.   Home Depot's failure to disclose that it does not enlist industry standard

security practices also constitutes an unfair business practice under the UCL. Home Depot's conduct is unethical, unscrupulous, and substantially injurious to the California Class. Whereas Home Depot's competitors have spent the time and money necessary to appropriately safeguard their products, service, and customer information, Home Depot has not—to the detriment of its customers and to competition.

106.   As a result of Home Depot's violations of the UCL, Plaintiffs and the other members of the Contract Class are entitled to injunctive relief including, but not limited to: (1) ordering that Home Depot utilize strong industry standard encryption algorithms for encryption keys that provide access to stored customer data; (2) ordering that Home Depot implement the use of its encryption keys in accordance with industry standards; (3) ordering that Home Depot, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests and audits on Home Depot's systems on a periodic basis; (4) ordering that Home Depot engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (5) ordering that Home Depot audit, test and train its security personnel regarding any new or modified procedures; (6) ordering that Home Depot, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Home Depot is compromised, hackers cannot gain access to other portions of Home Depot's systems; (7) ordering that Home Depot purge, delete, destroy in a reasonable secure manner customer data not necessary for its provisions of services; (8); ordering that Home Depot, consistent with industry standard practices, conduct regular database scanning and security checks; (9) ordering that Home Depot, consistent with industry standard practices, evaluate web applications for vulnerabilities to prevent web application threats to consumers who purchase Home Depot products and services through the internet; (10) ordering that Home Depot, consistent with industry standard practices, periodically conduct internal training and education to inform internal

security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (11) ordering Home Depot to meaningfully educate its customers about the threats they face as a result of the loss of their PII to third parties and the theft of Home Depot's source code, as well as the steps Home Depot's customers must take to protect themselves.

107.   As a result of Home Depot's violations of the UCL, Plaintiffs and Class members have suffered injury in fact and lost money or property, as detailed in Paragraphs 60 through 66 of this Class Action Complaint. They purchased products or services they otherwise would not have purchased, or paid more for those products and services than they otherwise would have paid. Plaintiffs request that the Court issue sufficient equitable relief to restore Class members to the position they would have been in had Home Depot not engaged in unfair competition, including by ordering restitution of all funds that Home Depot may have acquired as a result of its unfair competition.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Home Depot, as follows:

A.     For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

B.     For equitable relief enjoining Home Depot from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs and Class members' private information, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiffs and Class members;

C.     For equitable relief compelling Home Depot to utilize appropriate methods and policies with respect to consumer data collection, storage and safety and to disclose with specificity to Class members the type of PII and PCD compromised, and other information required under Cal. Civ. Code § 1798.82;

D.     For equitable relief requiring restitution and disgorgement of the revenues

CLASS ACTION COMPLAINT

wrongfully retained as a result of Home Depots' wrongful conduct;

E.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

F.      For an award of costs of suit and attorneys' fees, as allowable by law; and

G.      Such other and further relief as this court may deem just and proper.

Dated:  September 12, 2014              Respectfully submitted,

                                        **AHDOOT & WOLFSON, PC**

                                        Tina Wolfson
                                        Robert Ahdoot
                                        Theodore W. Maya
                                        Bradley King
                                        Keith Custis (Of Counsel)
                                        AHDOOT & WOLFSON, PC
                                        10850 Wilshire Blvd., Suite 370
                                        Los Angeles, California 90024
                                        Telephone: 310-474-9111
                                        Facsimile: 310-474-8585

                                        JOHN A. YANCHUNIS
                                        MORGAN & MORGAN
                                        COMPLEX LITIGATION GROUP
                                        201 N. Franklin Street, 7th Floor
                                        Tampa, Florida 33602
                                        Telephone: (813) 223-5505
                                        Facsimile: (813) 223-5402

                                        PAUL C. WHALEN
                                        LAW OFFICES OF PAUL C. WHALEN, P.C.
                                        768 Plandome Road
                                        Manhasset, New York 11030
                                        Telephone: (516) 627-5610
                                        Facsimile: (212) 658-9685

                                        Counsel for Plaintiffs
                                          WALID KHALAF, JASMIN GONZALEZ,
                                          STEFANIE SMITH and STEVEN O'BRIEN

CLASS ACTION COMPLAINT